# Thames v. Central City Insurance Company.

*Bill in Equity to compel Reinstatement of Stockholder in Corporation.*

1. *Proxy of stockholder in private corporation; notice.* — A stockholder in an incorporated company, who is represented by his proxy at a stockholder's meeting, is chargeable with notice of all facts connected with the proceedings of the meeting, which were known to his proxy; and he cannot set up his want of notice, or ignorance of those facts, as a ground for equitable relief against the company.

2. *Private corporation; right and duty of stockholder in obtaining information of proceedings.* — The proceedings of an incorporated company being accessible to all its members, a stockholder desiring information as to the proceedings of a stockholders' meeting, at which he was represented by proxy, may procure copies, or inspect the records of the company in person; and if he neglects these means of obtaining information, the mere failure or omission of the secretary, in communicating to him by letter the resolutions adopted, to include one of the resolutions, is neither a fraud, nor a badge of fraud, on which he can found a claim for equitable relief against the company.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 23d February, 1869, by Cornelius E. Thames, against the Central City Insurance Company, Henry A. Stollenwerck, its president, and William White, its secretary; and sought a decree restoring and reinstating the complainant as a stockholder in said company. The material facts of the case, briefly stated, are these: The said insurance company was incorporated by an act of the General Assembly of Alabama, approved November 28, 1863, and its charter was subsequently amended by an act approved February 5, 1866. The complainant was one of the original corporators, and owned one hundred shares of stock, the nominal value of which was $10,000. He paid ten per cent. of this amount on the organization of the company, and gave his note with sureties for the residue, as authorized by the charter; and other credits were afterwards entered on his note for stock. Early in 1868, the company having met with serious losses, and its business not having been successful, a meeting of its stockholders was called, and held on the 19th of February, 1868, at Selma, its place of business, at which meeting the following resolutions were adopted: —

" 1. *Resolved*, That any stockholder of this company whose stock is not fully paid up, may be allowed by the board of directors to surrender his stock, and have his stock notes or bills cancelled, upon his paying by the 1st day of April, 1868, thirty-three and one third per cent. on the amount of the original stock, not computing interest, nor any dividend heretofore declared.

" 2. *Resolved*, That if, in the opinion of the board of directors, any note given for stock is not properly secured, the prin-

cipal on the note shall be required, if he has not paid the amount provided for in the above resolution, to give a new note, with good security, by the 1st day of April, 1868, or to surrender his stock; and on his failing to do either, his note shall be put in suit for the whole amount.

" 3. *Resolved*, That so much stock shall be paid in on the unpaid stock as. shall amount, with the sum already paid thereon, to forty (40) per cent. of the original subscription, in addition to the interest due on the stock. This call shall not apply to stockholders who have paid as much as the amount aforesaid, and the interest due on the original stock; and if any stockholder fails to pay such call, and the interest due on his stock note or bill, for twenty days after the time required by the board of directors, his stock note or bill shall be put in suit, and the entire amount due on the same shall be collected.

" 4. *Resolved*, That as soon as practicable after the 1st day of April, 1868, the directors shall reduce the stock to its then cash value, and shall estimate and equalize the losses amongst the stockholders, and shall call in and cancel the stock certificates heretofore issued, and issue new certificates, for proper amounts, to the remaining stockholders.

" 5. *Resolved*, That the insurance business of this company must be conducted only on the best class of risks.

" 6. *Resolved*, That in case the stock of this company is not paid up, or reduced, under the foregoing resolutions, the board of directors are hereby authorized to call in all the unpaid stock.

" 7. *Resolved*, That the board of directors are hereby authorized to carry into effect the foregoing resolutions, and to adopt all proper measures for that purpose."

The complainant was not present at this meeting, but was represented by Washington M. Smith, whom he had appointed as his proxy, and who also owned $10,000 of the stock. Smith voted his own share of the stock for the resolutions, and the complainant's stock against them; and afterwards, on the same day, he wrote to the complainant as follows: " The ' Central City ' convention met to-day. No provision is made in your case of security for Prestridge. I could not get anything done. It provided that all may go out by paying and losing one third of amount of stock; or they may stay in if they pay more than one third, and get scrip for amount paid above that. I will either pay and go out, or pay more and hold some stock; which I may do is not determined on yet. Either case is hard enough. This was the best that could be done; but, to keep all right, I voted your stock against it."

[Thames *v*. Central City Insurance Company.]

On the 24th February, 1868, the board of directors met and adopted the following resolution, for the purpose of carrying into effect the resolutions of the stockholders' meeting, to wit : " *Resolved*, That each stockholder who has not heretofore paid as much as forty (40) per cent. of his stock, in addition to the interest which has accrued on the stock, is hereby required to pay, by the 1st day of April, 1868, forty (40) per cent. upon his stock, including the payments heretofore made by him, and also the interest which may be then due on his stock; and if any such stockholder fails to pay said sum and interest, for twenty days after the date aforesaid, his stock note or bill shall be put in suit, and the entire amount due thereon shall be collected." In the early part of March following, White, the secretary of the company, sent a letter or circular to the complainant, at Mobile, in these words : " Office Central Ins. Co., Selma, Ala. Extract: The following resolutions were adopted at the stockholders' meeting, Feb. 19, 1868," setting out the first and third of the resolutions above copied. " The board of directors adopted the following on the 24th of February, 1868," to wit, the resolution above set out. On the 27th March, 1868, the complainant paid up the amount required to discharge him under the first resolution of the stockholders' meeting, surrendered his stock, and had his stock note cancelled. On the 9th April following, the directors held another meeting, and adopted the following additional resolution : " *Resolved*, That any stockholder who has paid forty (40) per cent. of his stock, and all interest due on the same, may be permitted to surrender all his unpaid stock ; and after he has done so, the president is authorized to surrender to such stockholder his stock note to be cancelled."

On the 24th November, 1868, the complainant addressed a written communication to the company, alleging that he had acted under a mistake and misapprehension of the facts when he surrendered his stock, as above stated, inclosing a copy of the secretary's letter to him, which, as he said, had misled him, and asking, as a matter of right, that he should be reinstated as a stockholder in the company. On the 22d January, 1869, he was officially informed by the secretary that the company declined to accede to his request or demand, and thereupon the bill in this case was filed, as above stated. The bill alleged that the complainant, when he surrendered his stock, had no other knowledge or information as to the action of the stockholders' meeting than that afforded by the official communication of the secretary ; that if he had been apprised of the fourth resolution he would not have surrendered his stock, but would have accepted the alternative proposition; and that the suppression of this resolution, under the circumstances,

was a fraud on his rights. The bill prayed that an account might be taken, to ascertain the sum which the complainant must pay to make up the forty per cent. and interest on his stock, as provided in the last resolution of the board of directors ; and that on his paying this sum he should be reinstated as a stockholder in the company. On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

MORGAN, LAPSLEY & NELSON, for appellant.

PETTUS & DAWSON, *contra.*

PETERS, C. J. — The bill is filed by a stockholder in an incorporated company, to compel the company to restore him to his membership therein. The ground of equity alleged seems to be somewhat peculiar. The company is charged with practising a fraud on the complainant, by a misrepresentation or concealment of facts, which led to an injurious withdrawal by the complainant from the company. The answers fully and explicitly deny all fraud, or fraudulent suppression of the facts, on the part of the company or its agents; and we think, as the learned chancellor thought, that the evidence fully sustains the answers.

1. The bill alleges that White, the secretary of the company, in notifying the complainant of the proceedings of the stockholders' meeting held on the 19th day of February, 1868, failed to include the fourth resolution adopted by them ; and that, in consequence of this failure, the complainant acted without a full knowledge of all the facts which ought to have been made known to him when he paid the balance on his stock required to discharge him from further liability to the company, surrendered his stock, and had his stock note cancelled, as authorized by the first resolution adopted at said stockholders' meeting ; that is, he acted under a deception, brought about by the company, through its secretary, White. But the testimony shows that the complainant was represented at that meeting by Washington M. Smith, as his proxy, who, while voting his own stock for the resolutions, voted the complainant's stock against their passage. In this Smith acted for himself and also for the complainant. In such a case, the knowledge of the proxy, or agent, is brought home to the principal. What Smith knew, he knew as well for his principal as for himself. What was notice to the proxy, was notice to the stockholder whom he represented in the meeting. It is a common principle of all agencies, both at law and in equity, that one who acts by another, acts by himself. Story on

[Thames v. Central City Insurance Company.]

Agency, §§ 140, 451; *Smyth* v. *Oliver*, 31 Ala. 39; *Wiley, Banks & Co.* v. *Knight*, 27 Ala. 336. Moreover, Smith informed his principal, by letter, on the day these resolutions were adopted, of what had been done. Very clearly his letter of the 19th September refers to the stockholders' convention, and to what they had resolved upon. This was actual notice to the complainant.

2. The proceedings of the company were accessible to all its members; and all are presumed to take notice of such proceedings when they participate in the meeting at which they may have been transacted. This was the condition of the complainant in this instance. He must have known that the stockholders acted by resolution; and if he had wished to be better informed as to the contents of their resolutions than he had been by his proxy, he could have procured copies of the proceedings, or he might have inspected the records of the company in person. But no inquiry was made; no effort to be better informed was attempted. In such a case, the mere failure of the secretary of the company to communicate the resolutions of the stockholders to a member who participated by proxy in their passage, is not a fraud, nor a badge of fraud. *Steamboat Belfast* v. *Boon & Co.* 41 Ala. 68, 69. There is no pretence of fraud shown or attempted, except the omission of White to communicate said fourth resolution.

But, even if this resolution had been communicated in White's letter, the board of directors had not at that time taken steps to act upon it. It was not until the 9th April, 1868, after the complainant had surrendered his stock, and gone out of the company as a stockholder, that the board of directors passed their resolution to carry into effect the purpose of the stockholders, as indicated in their proceedings of the 19th February, 1868. The complainant had no rights under this resolution. He was not a stockholder in the company when it went into effect; and it seems to have been intended only for the benefit of stockholders. He does not ask in his bill for any relief beyond that afforded by this resolution of the board of directors; and this relief he is not entitled to have, either as a stockholder still remaining in the company, or as one who had paid forty per cent. of his stock and withdrawn. He does not occupy either of these positions. His misfortune is of his own seeking, and not the result of any fraudulent action of the company or its officers. The decree of the learned chancellor is in conformity with law, and must stand as the decree of this court. At the same time, it may be admitted that, under a different code of morals, where a more generous appreciation of justice is acknowledged than that which has yet been reached in the edicts of legislation,

which are the rules of the money changers, the complainant might have just grounds to feel injured. But the law has not yet attained that elevated and serene sense of right which imposes the obligation to treat others as we would wish to be treated by them.          The decree is affirmed, with costs.